IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS U.G., | Civil No. 1:26-cv-04427-MWJS |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | A# 245-593-717 |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*, | |
| Respondents. | |

**INTRODUCTION**

Petitioner Carlos U.G.[1] is detained at the California City Detention Center

pending the resolution of his removal proceedings.  Dkt. No. 1.  He seeks a writ of

habeas corpus under 28 U.S.C. § 2241, for the second time, contending that he is being

detained in violation his constitutional due process rights.  The court granted his first

petition only in part.  Although the court agreed that Petitioner was entitled to a bond

hearing, it concluded that, at least at that stage, the record did not show that he was

entitled to the broader relief of immediate release.  *Carlos U.G. v. Warden of the Cal. City*

*Detention Facility*, No. 1:26-cv-03209, 2026 WL 1391272 (E.D. Cal. May 18, 2026).  A bond

---

[1]      For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

hearing was then held for Petitioner and an Immigration Judge (IJ) concluded he should remain in immigration detention.

Petitioner has now returned to court, and he renews his argument that the court should order his immediate release. This time, Petitioner has fully developed the factual record. And this time, the factual record shows that he is entitled to the full relief he seeks. The court therefore GRANTS the petition and orders Petitioner's immediate release.

## BACKGROUND

The background of this case is described in the court's order granting Petitioner's first petition in part. *See Carlos U.G.*, 2026 WL 1391272. As recounted in that order, the essential facts are these:

Petitioner entered the United States in December 2023, was detained by immigration authorities, issued a Notice to Appear, and released on his own recognizance. That release represented a determination by immigration authorities that he was neither a flight risk nor a danger to the community. In the years that followed, he applied for and received work authorization and became a caretaker for his life partner, who suffers from a debilitating health condition. *See id.* at *1.

On November 1, 2025, Petitioner was arrested by local police and charged with four offenses stemming from a single incident. The charges included driving under the influence (Petitioner's first such offense); possession of a controlled substance; use or

possession of drug paraphernalia; driving on a denied license; and operating a vehicle without insurance. *See* Dkt. No. 1-1, at pg. 2. At the time of Petitioner's original petition, the court observed that "[t]he circumstances of these charges are unclear: the record does not, for example, clarify what drug was allegedly involved, in what alleged quantity, and whether Petitioner was alleged merely to be present in an area where drugs were found or whether he instead was alleged to be in more direct possession of them." *Carlos U.G.*, 2026 WL 1391272, at *1. And based on the state of the record at that time, the "disposition of these charges [was] similarly unclear." *Id.* Nonetheless, there is no question that driving under the influence and possession of a controlled substance are—at least in the absence of extenuating circumstances in an individual case—serious categories of crime.

On November 3, 2025, two days after his arrest, Petitioner was "encountered at the Salt Lake County Metro Jail" by Immigration and Customs Enforcement (ICE) and re-detained by immigration authorities. *Id.* Petitioner has remained in immigration custody ever since. So on April 27, 2026, he filed his first petition for writ of habeas corpus, which the court granted in part on May 18, 2026. *Id.*

In its order, the court concluded that "Petitioner's constitutional due process rights are being violated by his ongoing detention without a bond hearing before an IJ to test whether any circumstances have materially changed from when the government released Petitioner on his own recognizance and implicitly found that he was neither a

3

flight risk nor a danger to the community." *Id.* at *2. But as far as the appropriate remedy was concerned, the court determined that, "on the facts presented here, at this stage Petitioner should be granted a bond hearing rather than immediate release." *Id.* That was because, in light of the multiple criminal offenses for which Petitioner had been charged shortly before his immigration detention—and in light of the absence of any factual evidence suggesting the alleged crimes were less serious in this case than they are as a category—the court could not find that pre-deprivation process was feasible. Accordingly, the court granted only the remedy of post-deprivation process; it ordered Respondents to release Petitioner unless they demonstrated, "within seven days of the date of this Order, by clear and convincing evidence at a bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified." *Id.*

Before the period for Petitioner to be provided with a bond hearing had elapsed, he moved the court to reconsider its order, asking it to grant "immediate release unless and until Respondents establish that he is a flight risk or danger to the community at a constitutionally adequate *pre*-deprivation hearing with adequate notice." *Carlos U.G.*, No. 1:26-cv-03209, at Dkt. No. 13. The court denied that motion without prejudice, but it recognized "that the record before it contains certain factual ambiguities which, through post-deprivation process and the record developed there, might support the conclusion that pre-deprivation process was in fact required before Respondents could

re-detain Petitioner."  *Id.* at Dkt. No. 14.  As a result, although the court concluded that it could not find, on the existing factual record, that Petitioner should have been given pre-deprivation process, the court made clear that the denial of the motion for reconsideration was undertaken "without prejudice to such a future argument" on a fuller factual record.  *Id.*

Meanwhile, on May 22, 2026, Petitioner was moved without explanation to a waiting area within the California City Correctional Facility, where he remained for hours.  According to Petitioner, "[h]e had no idea that he was waiting for his bond hearing."  Dkt. No. 1, at pg. 7.  Eventually, he was brought into a separate room where a bond hearing was held for him by video teleconference over the course of about ten minutes.  *Id.*  But because he "received no notice and is currently in detention with limited access to the phone or other means of collecting information or contacting the outside world, [Petitioner] was unable to present documents or witnesses to establish that he is neither a danger to the community nor a flight risk . . . [and] did not have counsel at the bond hearing."  *Id.* at pgs. 7-8.  And neither counsel in this case nor Petitioner's partner, who would have testified at the hearing, was notified that the hearing was taking place.  *Id.* at pg. 8.

At that hearing, the IJ denied bond on the ground that the government had demonstrated, by clear and convincing evidence, that Petitioner was a danger to the community.  Dkt. No. 1-4.  Following the denial of bond, Petitioner filed this second

petition for writ of habeas corpus, Dkt. No. 1, along with a motion for temporary restraining order, Dkt. No. 3.  Respondents opposed the petition, Dkt. No. 9, and Petitioner replied, Dkt. No. 10.  Neither party has requested oral argument.

## **DISCUSSION**

In its order granting Petitioner's first petition, the court concluded that Petitioner possessed a liberty interest in his continued freedom and that Respondents had unconstitutionally deprived him of that liberty interest without due process. Respondents have not asked the court to reconsider those determinations here.  *See* Dkt. No. 9.  Because neither party disputes for the purposes of this second petition that Petitioner possessed a liberty interest requiring some measure of process accompanying its deprivation, the only question is whether the process that Petitioner was entitled to needed to be provided *before* or *after* his detention.  If Petitioner should have been given process before his detention—that is, pre-deprivation process—then he must be ordered immediately released because it is not possible to remedy that constitutional violation with anything less.  If, by contrast, it was sufficient to provide him with post-deprivation process, then his continued detention *could* be constitutional if the post-deprivation process he received was adequate.

At the outset, it bears emphasizing that this question has not yet been definitively resolved.  Although the court previously rejected Petitioner's argument that he was entitled to pre-deprivation process (and thus immediate release), it did so based

6

solely on the ground that the factual record, at that time, did not justify that relief. *Carlos U.G.*, No. 1:26-cv-03209, at Dkt. No. 14; *see also Carlos U.G.*, 2026 WL 1391272, at *2. Given that the first petition *did* readily demonstrate that Petitioner was at least entitled to the narrower relief of a bond hearing, the court promptly ordered that relief, while reserving the possibility that Petitioner might make a fuller record justifying the remedy of immediate release in a future petition. That prompt grant of more modest relief created the possibility that Petitioner might be immediately released (through an IJ's grant of bond) without his having to traverse the potentially more plodding path of developing a fuller factual record about his arrest on November 1, 2025, as well as about the feasibility of pre-deprivation process in the face of that arrest.

The IJ denied bond, however, and so Petitioner now properly seeks to avail himself of the opportunity to develop a fuller factual record that, this time, might support the finding that pre-deprivation process was required. To that end, he contends that the "[f]actual ambiguities identified" in the court's prior orders "can now be resolved." Dkt. No. 1, at pg. 10. His new petition offers several factual clarifications. At the time of the court's original order, it was not clear whether Petitioner had had any prior encounters with law enforcement, but Petitioner states that "according to Utah court records, the November 1, 2025 arrest was [Petitioner's] only encounter with law enforcement aside from traffic tickets[,] [and] [h]e has no prior misdemeanor arrests and no felony arrests." *Id.* It was similarly unclear, at the time of Petitioner's first

petition, whether Petitioner had any other convictions, but Petitioner now submits that the "November 6, 2025 conviction for a traffic offense is his only conviction." *Id.* Petitioner also submits evidence clarifying that the pending allegations are nothing more than "misdemeanors and traffic violations." *Id.* And he offers specifics as to the factual basis for those charges. As for his DUI charge, he offers an arrest report alleging that he was encountered by law enforcement while "asleep in a vehicle parked in a driveway." *Id.* at pg. 11; *see* Dkt. No. 1-5. There is no allegation that he was driving recklessly or dangerously; indeed, there is no evidence he was driving at all. And as for his possession and drug paraphernalia charges, he submits similar documentation alleging that he was found in possession of "a small baggy with a pink powdery substance" suspected to be "pink cocaine"—which generally is "likely [to] contain[] no cocaine"[2]—and a spoon suspected to be paraphernalia. Dkt. No. 1, at pg. 11. And while Petitioner acknowledges that "there are factual questions that remain open in the Utah state traffic/misdemeanor case," he contends that "[a]t worst, if these charges were to be proven, they constitute a misdemeanor offense of possession of a small amount of drugs and a DUI for sleeping in a car, as the allegation is that Petitioner was asleep in a vehicle parked in a driveway, not that he was actually driving." *Id.*

---

[2]     Drug Enforcement Administration, *What Is Pink Cocaine?*, https://www.dea.gov/pink-cocaine (last visited July 10, 2026) [https://perma.cc/G7K4-MPPV]

Petitioner also submits Utah court records from the days following his arrest, in which the state conducted a "Public Safety Assessment" in which the court "identified no risk factors and gave him zero points," and accordingly assigned him "the lowest possible score for both risk of new criminal activity and risk of failing to appear." *Id.* at pg. 5; *see also* Dkt. No. 1-1.  As a result, the court ordered release on conditions including "court date reminders, a weekly automated phone check in, substance abuse classes, and [urinalysis] testing, in addition to monitoring for new charges and [Petitioner] promising to appear for court and not commit any crimes." *Id.*; *see also* Dkt. No. 1-2.  He emphasizes that the court released him on his own recognizance and declined to impose a monetary bond, electronic monitoring, daily check-ins, or meetings with Pretrial Services—all options available to the Utah courts for individuals who present a risk of flight or dangerousness.  *Id.* at pgs. 5-6.  And he notes that this determination came in a state with "some of the strictest (if not the strictest) DUI laws in the nation" and therefore "was not the result of state laws or state judges failing to take DUIs seriously." *Id.* at pg. 6.

On the basis of this fuller factual record, Petitioner reasserts his original argument:  that pursuant to the Due Process Clause of the United States Constitution, Respondents were required under the circumstances to provide him pre-deprivation process for depriving him of his physical liberty.  He contends that the additional evidence now before the court supports the conclusion that he was entitled to a

"constitutionally adequate pre-deprivation hearing" before he could be re-detained, and that because a "post-deprivation hearing is not a valid substitute and thus not an adequate remedy" for the constitutional violation effected by his re-detention, "the appropriate remedy is immediate release along with an order that re-detention would be permissible only with such a pre-deprivation hearing."  Dkt. No. 1, at pg. 15.  As support for his position, Petitioner observes that "[c]ourts 'tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* at pg. 13 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993)).  And he argues that courts typically only find extraordinary situations present when there is "evidence of urgent concerns or an especially strong government interest" that suffices to "justify a post-deprivation, rather than a pre-deprivation, hearing"—circumstances which Petitioner submits are not present here.  *See id.* (quoting *Guzman Colque v. Warden*, 1:26-cv-03281, 2026 WL 1275279, at *1 n.1 (E.D. Cal. May 7, 2026)).

Respondents counter that the type and degree of process due is evaluated by applying the test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976); they contend that under *Mathews*, "these circumstances do support the requirement of a pre-deprivation hearing," and that Petitioner's second petition should therefore be denied. Dkt. No. 9, at pgs. 2-4.  The court agrees that *Mathews* provides the appropriate

framework to evaluate due process claims in an immigration detention context.  *Cf.*

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  But it reaches a different

conclusion about the result that *Mathews* compels, based on the fuller factual record

now before the court.

Under *Mathews*, the court must consider "three distinct factors" to determine

"the specific dictates of due process":  (1) "the private interest that will be affected by

the official action"; (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail."  424 U.S. at 335.  As Respondents acknowledge, "freedom

from physical restraint 'lies at the heart of the liberty that [the Due Process] Clause

protects.'"  Dkt. No. 9, at pg. 3 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).  And

as district judges in this district and elsewhere have recognized, individuals who have

been detained and released by the government, "even where such release is conditional,

have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083,

1093 (E.D. Cal. 2025); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D.

Wash. 2025) (collecting cases).  Petitioner has a substantial private interest in his

physical freedom from detention, and the first *Mathews* factor therefore weighs in

Petitioner's favor.

As to the second *Mathews* factor, the risk of erroneous deprivation is high, as the history of this case unfortunately shows.  Without a pre-deprivation hearing at which Petitioner could have challenged the basis for his re-detention—namely, the government's allegation that his arrest constituted changed circumstances sufficient to revoke his order of release—there is an unacceptably high risk that he may have been deprived of his liberty interest based on a flawed or incomplete understanding of the facts supporting exigency or dangerousness.  *See generally Rivera-Castaño v. Blanche*, No. EDCV 26-2706, 2026 WL 1915720, at *3 (C.D. Cal. June 30, 2026) (collecting cases).  Indeed, the fuller record presented alongside his second petition suggests that may have been the case here.  And the "the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335, is likewise high.  Had Petitioner received notice and the opportunity to prepare for a hearing prior to being re-detained, he could have obtained the documentation now before the court and presented it to an IJ in a pre-deprivation hearing.  That may or may not have changed the IJ's decision; because Petitioner was unable to obtain and present that information in his post-deprivation hearing, it is impossible to know.  The point is that without a pre-deprivation opportunity to be heard, Petitioner was unable to effectively contest the government's allegation that he had become a danger to the community.  And that suggests the risk of erroneous deprivation was unacceptably high.

12

Respondents counter that "the risk of erroneous deprivation is lowered" under these circumstances "because Petitioner poses a danger to the community." Dkt. No. 9, at pg. 3. But that sort of conclusion is precisely the sort that a pre-deprivation hearing is designed to test. And while Respondents observe that "in some circumstances" where "a pre-deprivation hearing would have been impracticable and/or would have motivated flight," pre-deprivation process is not required, they offer no distinct argument as to why those circumstances are present here. *Id.* (quoting *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)).

Indeed, the case Respondents cite in support of their argument underscores why those circumstances are not present here. In *Martinez Hernandez*, the court considered the case of a petitioner who had been arrested for "aggravated damage" and aggravated murder in his home country of El Salvador and who was subsequently arrested in California on charges of robbery, assault with a deadly weapon not a firearm, battery, and preventing/dissuading a victim/witness. 2025 WL 2495767 at *1-2. Although the court noted that, under the specific factual circumstances of that case, a substantial risk of erroneous deprivation existed, it also acknowledged that the facts alleged by the government could support the conclusion that "providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id.* at *12. Here, by contrast, Petitioner has been charged

13

with two traffic citations, a first-time DUI offense (for which he was apprehended based on his sleeping in a parked car), and possession of a personal-use amount of a substance suspected to be pink cocaine (and which very well may not have contained any cocaine at all).  These offenses—now that Petitioner had fleshed out their factual details—provide no reason to think that a pre-deprivation hearing would have been impracticable or would have motivated flight, as in *Martinez Hernandez*.[3]  And they do not provide a solid foundation upon which the court could conclude that Petitioner posed such a danger to the community as to render pre-deprivation process impracticable—unlike the offenses at issue in *Martinez Hernandez*.  The risk of erroneous deprivation is therefore significant.

Finally, the government's countervailing interest—the third *Mathews* factor—is not insubstantial.  "Unquestionably, the government has a significant national interest in enforcing its immigration laws.  Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system."  *Esteban Lopez v. Chestnut*, No. 1:26-cv-02629, 2026 WL 1803571, at *6 (E.D. Cal. June 23, 2026), *report and recommendation adopted*, 2026 WL 1884366 (E.D. Cal. June 30,

---

[3]     This is not to say, of course, that the offenses Petitioner has been accused of could never support a finding of dangerousness or flight and render a pre-deprivation hearing impracticable.  But in the context of this case, the underlying facts, as more fully developed here, do not obviously support such a conclusion, and Respondents have not offered any argument—beyond the fact of the charges themselves—why they should be viewed as suggesting sufficient dangerousness or flight risk as to make pre-deprivation process impracticable.

2026). But Respondents have offered no explanation as to how Petitioner could be a threat to these interests, particularly in light of the more fully developed factual record that Petitioner has presented here. And "although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and [a] hearing . . . before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). The third factor therefore also weighs in favor of Petitioner.

\*    \*    \*

On the underdeveloped factual record in the first petition, the court could not conclude that Petitioner was entitled to pre-deprivation process. On their face, Petitioner's alleged DUI and drug-related crimes, taken as categories and taken together, were the kinds of serious offenses that might "urgently require[] arrest" and might support the conclusion that "prompt post-deprivation process" was sufficient. *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

But with the fuller record Petitioner has now presented, the November 1, 2025, arrests must be viewed on their individual terms and not as categories of alleged crime. And taking them on their individual terms, the court cannot say that post-deprivation process was sufficient under the circumstances. Instead, on this fuller factual record, the court concludes that there is now an "absence of evidence of urgent concerns," and

15

hence "a pre-deprivation hearing was required to satisfy due process." *Luis Alberto R.C. v. Murray*, 817 F. Supp. 3d 917, 927 (E.D. Cal. 2025).  For that reason, the court grants this new petition in full.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED.  Respondents are ORDERED to immediately release Petitioner Carlos U.G. (A# 245-593-717) from their custody.  Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.  This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

16

Given the grant of the petition, Petitioner's Motion for Temporary Restraining

Order, Dkt. No. 3, is DENIED as moot.  The Clerk of Court is DIRECTED to close this

case and enter judgment for Petitioner.

IT IS SO ORDERED.

DATED:  July 10, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 1:26-cv-04427-MWJS; *Carlos U.G. v. Warden of the California City Detention Center*, et al.; ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS